## IN THE UNITED STATE DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

SUE ALLEN-MILLER and
ANTONIO MILLER

        Plaintiffs,

v.

COOK MEDICAL, LLC., COOK
INCORPORATED, WILLIAM COOK
EUROPE APS

        Defendants.

Case No. 3:20-cv-00615

## COMPLAINT

Plaintiffs Sue Allen-Miller and Antonio Miller (hereinafter Ms. Allen-Miller may be referred to as "Plaintiff" and Ms. Allen-Miller and Mr. Miller collectively as "Plaintiffs"), by and through the undersigned counsel, hereby file Complaint against Defendants Cook Medical, LLC, Cook Incorporated, and William Cook Europe APS.

## INTRODUCTION

1.    This is an action for damages against COOK MEDICAL, LLC, COOK INCORPORATED, and WILLIAM COOK EUROPE APS (hereinafter collectively referred to as "Cook" or "Defendants"). The allegations, claims and theories of recovery relate to the Defendants' design, manufacture, sale, testing, marketing, labeling, advertising, promotion and/or distribution of its unsafe medical devices known as Gunther Tulip Mreye, Gunther Tulip Vena Cava Filter, Cook Celect Vena Cava Filter, and Cook Celect Platinum, hereinafter "Cook IVC Filters" or "Cook's IVC Filters."

2.    Cook IVC Filters are associated with, and cause, an increased risk for serious

injury and death as a result of adverse events including: tilting, perforation, fracture, breakage and migration.

3.     At all times relevant to this action, Cook intentionally, recklessly, and/or negligently failed to act as to the known failures and injuries associated with its devices and/or failed to warn about and concealed, suppressed, omitted, and/or misrepresented the risks, dangers, defects and disadvantages of its IVC Filters.

4.     At all times relevant to this action, Cook intentionally, recklessly, and/or negligently advertised, labeled, promoted, marketed, sold and/or distributed its IVC Filters as a safe medical device when in fact Cook had reason to know, and/or did know, that its IVC Filters were not safe for its intended purposes, and that its IVC Filters caused serious injury and death.

5.     At all times relevant to this action, Cook is and was strictly liable for injuries caused by its IVC Filters because the devices are unreasonably dangerous and not accompanied by adequate warnings about its danger.

## PARTIES & JURISDICTION

6.     As a direct and proximate result of having Defendants' IVC Filter implanted in her, Plaintiff has suffered permanent and continuous injuries,

7.     Plaintiff, Sue Allen Miller, is a person of the full age of majority and a resident and domiciliary of East Baton Rouge Parish, State of Louisiana. At all pertinent times, she was domiciled in and was a citizen of East Baton Rouge Parish in the State of Louisiana, which is located within the district of the United States District Court for the Middle District of Louisiana.

8.     Plaintiff, Antonio Miller is a person of the full age of majority and a resident and domiciliary of East Baton Rouge Parish, State of Louisiana. Antonio Miller is, and has been at

all pertinent times, Sue Allen Miller's spouse. At all pertinent times, he has was domiciled in and was a citizen of East Baton Rouge Parish in the State of Louisiana, which is located within the district of the United States District Court for the Middle District of Louisiana.

9.    Defendant Cook Incorporated was and is an Indiana corporation authorized and/or doing business in the state of Louisiana. At all times relevant to this action, Cook Incorporated designed, set specifications, manufactured, prepared, compounded, assembled, processed, promoted, marketed, distributed and/or sold the IVC Filters to be implanted in patients throughout the United States, including Louisiana . At all times relevant hereto, Defendant Cook Incorporated was engaged in business in Louisiana, has conducted substantial business activities, and derived substantial revenue from within the State of Louisiana. This Defendant has also carried on solicitations or service activities in Louisiana.

10.    Defendant Cook Incorporated is the parent company of Defendant Cook Medical, LLC. Cook Medical, LLC was and is an Indiana limited liability company authorized and/or doing business in the state of Louisiana. At all times relevant to this action, Cook Medical, LLC designed, set specifications, manufactured, prepared, compounded, assembled, processed, promoted, marketed, distributed and/or sold the IVC Filters implanted in patients throughout the United States, including Louisiana. At all times relevant hereto, Cook Medical, LLC was registered to do business with the state of Louisiana. At all times relevant hereto, Defendant Cook Medical LLC was engaged in business in Louisiana, has conducted substantial business activities, and derived substantial revenue from within the state of Louisiana. This Defendant has also carried on solicitations or service activities in Louisiana.

11.    Defendant William Cook Europe APS is based in Bjaeverskov, Denmark and regularly conducts substantial business in the State of Louisiana and is authorized to do so.

3

Defendant William Cook Europe APS may be served with process upon its registered agent for service: C/O CSC Lawyers Incorporating Service, 50 West Broad Street, Suite 1800, Columbus, Ohio 43215.

12.    At all times alleged herein, the Cook defendants include any and all parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

13.    Cook develops, manufactures, sells and distributes medical devices for use in various medical applications including endovascular cardiology, and surgical products throughout the United States and around the world. Cook's products at issue in this matter include the Gunther Tulip Mreye, Gunther Tulip Vena Cava Filter, Cook Celect Vena Cava Filter, and the Cook Celect Platinum all of which are used for the prevention of recurrent pulmonary embolism via placement in the vena cava.

14.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the Plaintiffs and the Defendants are citizens of different states, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), excluding interest and costs and there is complete diversity of citizenship between Plaintiffs and Defendants.

15.    The Court has personal jurisdiction over the Defendants under 28 U.S.C. §1391, because Defendants regularly conduct business in the State of Louisiana. Further, Defendants are present and doing business within this state and have continuous and systematic contacts in every state in the United States of America, including Plaintiffs' state of residence.

16.    At all times relevant, Cook was engaged in the business of researching,

designing, testing, developing, manufacturing, packaging, labeling, marketing, advertising, distributing, promoting, warranting and selling in interstate commerce, its IVC Filters either directly or indirectly through third parties or related entities.

17.     The Defendants are subject to *in personam* jurisdiction in each state because of the activity conducted therein. Defendants' activities in each state include: marketing, advertising, promoting, distributing, and receiving substantial compensation and profits from sales and other acts that caused or contributed to the harm giving rise to this action. Defendants also made or caused to be made material omissions and misrepresentations and breaches of warranties in Louisiana.

## **VENUE**

18.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 as a substantial part of the events or omissions giving rise to the claim occurred within this judicial district and the Defendants regularly conduct business in this this judicial district.

## **FACTUAL BACKGROUND**

19.     This is an action brought by Plaintiffs for injuries suffered as a result of the implantation of Cook's IVC filter, Gunther Tulip. The filter has migrated, tilted and perforated Plaintiff Sue Allen-Miller's small bowel.

20.     Defendants design, research, develop, manufacturer, test, market, advertise, promote, distribute, and sell products that are sold to and marketed to prevent, among other things, recurrent pulmonary embolism via placement in the vena cava. Defendants' products include, the Cook Celect Vena Cava Filter and the Gunther Tulip Filter (collectively referred to herein as "Cook Filters" and "Cook IVC Filters"), which are introduced via a coaxial introducer sheath system.

21.     Defendants sought Food and Drug Administration ("FDA") approval to market the Cook Filters and/or its components under Section 510(k) of the Medical Device Amendment.

22.     Section 510(k) allows marketing of medical devices if the device is substantially equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of the said device. The FDA explained the difference between the 510(k) process and the more rigorous "premarket approval" process in an amicus brief filed with the Third Circuit in *Horn v. Thoratec Corp.*, 376 F.3d 163, 167 (3rd Cir. 2004):

> A manufacturer can obtain an FDA finding of "substantial equivalence" by submitting a premarket notification to the agency in accordance with section 510(k)…A device found to be 'substantially equivalent' to a predicate device is said to be "cleared" by FDA (as opposed to "approved" by the agency under a [premarket approval]). A pre-market notification submitted under 510(k) is thus entirely different from a [pre-market approval] which must include data sufficient to demonstrate that the device is safe and effective. (Emphasis in original).

23.     In *Medtronic, Inc. v. Lohr*, 518 U.S. 470,478-79 (1996), the Supreme Court similarly described the 510(k) process, observing:

> If the FDA concludes on the basis of the [manufacturer's] §510(k) notification that the device is 'substantially equivalent' to a pre-existing device, it can be marketed without further regulatory analysis…The §510(k) notification process is by no means comparable to the [premarket approval] process; in contract to the 1,200 hours necessary to complete a PMA review, the §510(k) review is completed in average of 20 hours…Section §510(k) notification requires little information, rarely elicits a negative response from the FDA, and gets process quickly.

24.     An IVC filter, like the Cook Filters, is a device designed to filter blood clots (called "thrombi") that travel from the lower portions of the body to the heart and lungs. IVC filters may be designed to be implanted, either temporarily or permanently, within the vena cava.

25.    The inferior vena cava is a vein that returns blood to the heart from the lower portion of the body. In certain people, and for various reasons, thrombi travel from vessels in the legs and pelvis, through the vena cava into the lungs. Often these thrombi develop in the deep leg veins. The thrombi are called "deep vein thrombosis" or DVT. Once the thrombi reach the lungs they are considered "pulmonary emboli" or PE. An IVC filter, like the Cook IVC Filters, is designed to prevent thromboembolic events.

26.    The Cook Filters are retrievable filters.

27.    The Cook Celect® Vena Cava Filter has four (4) anchoring struts for fixation and eight (8) independent secondary struts to improve self-centering and clot trapping.

28.    The Gunther Tulip® Vena Cava Filter has a top hook and (4) anchoring struts for fixation and on each strut, it has a "flower" formation that is shorter than the strut where a wire piece branches out on each side of the strut forming an overall "flower" type formation on each strut.

29.    At all times relevant hereto, the Cook Filters were widely advertised and promoted by the Defendants as safe and effective treatment for prevention of recurrent pulmonary embolism via placement in the vena cava. At all times relevant hereto, Defendants knew its Cook Filters were defective and knew that defect was attributable to the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo.*

30.    A retrospective review of all Cook Gunther Tulip Filters and Cook Celect filters retrieved between July 2006 and February 2008 was performed. One hundred and thirty (130) filter retrievals were attempted but in 33 cases, the standard retrieval technique failed. The authors concluded that "unsuccessful retrieval was due to significant endothelialization and caval penetration" and that "hook endothelialization is the main factor resulting in failed

retrieval and continues to be a limitation with these filters." O. Doody, et al.; "Assessment of Snared-Loop Technique When Standard Retrieval of Inferior Vena Cava Filters Fail" Cardiovasc Intervent Radiol (Sept 4, 2008 Technical Note).

31.     A retrospective review of 115 patients who underwent Cook Celect IVC filter insertion between December 2005 and October 2007 was performed. While filter insertion was successful in all patients, the authors also concluded that "[f]ailed retrieval secondary to hook endothelialization continues to be an issue with this filter." O. Doody, et al; Journal of Medical Imaging and Radiation Oncology "Initial Experience in 115 patients with the retrievable Cook Celect vena cava filter" 53 (2009) 64-68 (original article).

32.     In a review of clinical data related to 73 patients who had Celect IVC filter implanted between August 2007 and June 2008, the authors found that the Celect IVC filter was related to a high incidence of caval filter leg penetration. Immediately after fluoroscopy-guided filter deployment in 61 patients, four filters (6.5%) showed significant tilt. Follow-up abdominal CT in 18 patients demonstrated filter related problems in 7 (39%), which included penetration of filter legs in 4 and fracture/migration of filter components in 1.

33.     In a study of Gunther Tulip and Celect IVC filters implanted between July 2007 and May of 2009 reported by Cardiovascular Interventional Radiology electronically on March 30, 2011 and published by journal in April 2012, one hundred percent of the Cook Celect filters and Gunther Tulip filters imaged after 71 days of implant caused some degree of filter perforation of the venal caval wall. Durack JC, et al, Cardiovasc Intervent Radiol., "Perforation of the IVC: rule rather than the exception after longer indwelling times for the Gunther Tulipand Celect Retrievable Filters," 2012 Apr.; 35(2):299-308. Epub 2011 Mar 30. The authors concluded: "Although infrequently reported in the clinical literature, clinical sequelae

from IVC filter components breaching the vena cava can be significant." Defendants knew or should have known that their IVC filters were more likely than not to perforate the vena cava wall.

34.     This same study reported that tilt was seen in 20 out of 50 (40%) of the implanted Gunther Tulip and Celect IVC filters and all titled filters also demonstrated vena caval perforation. Defendants knew or should have known that their IVC filters were more likely than not tilt and to perforate.

35.     While not inclusive of all medical studies published during the relevant time period, the above references show that the Defendants failed to disclose to physicians, patients and/or Plaintiff that its Cook Filters were subject to breakage, tilt, inability of removal, and migration even though they knew or should have known the same was true.

36.     At all times relevant hereto, the Defendants continued to promote the Cook Filter as safe and effective even when inadequate clinical trials had been performed to support long or short to safety and/or efficacy.

37.     The Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Cook Filters, as aforesaid.

38.     The Cook Filters are constructed of conichrome.

39.     The Defendants specifically advertise the conichrome construction of the filter as a frame which "reduces the risk of fracture."

40.     The failure of the Cook Filters is attributable, in part, to the fact that the Cook Filters suffer from a design defect causing it to be unable to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

41.     At all times relevant hereto, the Defendants failed to provide sufficient warnings

and instructions that would have put Plaintiff and the general public on notice of the dangers and adverse effects caused by implantation of the Cook Filters, including, but not limited to the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

42.     The Cook Filters were designed, manufactured, distributed, sold and/or supplied by the Defendants, and were marketed while defective due to the inadequate warnings, instructions, labeling, and/or inadequate testing in light of Defendants' knowledge of the products' failure and serious adverse events.

43.     That at all times relevant hereto, the officers and/or directors of the Defendants named herein participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew or should have known of the hazardous and dangerous propensities of the said products, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by the Plaintiffs.

## COUNT I: STRICT PRODUCTS LIABILITY – FAILURE TO WARN LOUISIANA PRODUCTS LIABILITY ACT (LPLA)

44.     Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

45.     Cook IVC Filters were defective and unreasonably dangerous when they left the possession of the Defendants in that they contained warnings insufficient to alert consumers, including Plaintiff, of the dangerous risks associated with the subject product, including but not limited to the risk of tilting, perforation, fracture and migration which are associated with and did cause serious injury and/or death.

46.     Information provided by Cook to the medical community and to consumers

concerning the safety and efficacy of its IVC Filters did not accurately reflect the serious and potentially fatal adverse events Plaintiff could suffer.

47.    At all times relevant hereto, the Cook IVC Filters were dangerous and presented a substantial danger to patients who were implanted with the Cook IVC Filters, and these risks and dangers were known or knowable at the times of distribution and implantation in Plaintiff. Ordinary consumers would not have recognized the potential risks and dangers the Cook IVC Filters posed to patients, because their use was specifically promoted to improve health of such patients.

48.    Had adequate warnings and instructions been provided, Plaintiff would not have been implanted with Cook IVC Filters, and would not have been at risk of the harmful injuries described herein. The Defendants failed to provide warnings of such risks and dangers to the Plaintiff and her medical providers as described herein. Neither Plaintiff, nor Plaintiff's physicians knew, nor could they have learned through the exercise of reasonable care, the risks of serious injury and/or death associated with and/or caused by Cooks' IVC Filters.

49.    Defendants knew or had knowledge that the warnings that were given failed to properly warn of the increased risks of serious injury and/or death associated with and/or caused by Cook IVC Filters.

50.    Plaintiff, individually and through her implanting physicians, reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

51.    Defendants had a continuing duty to warn Plaintiff and her physicians of the dangers associated with the subject products.

52.    Safer alternatives were available that were effective and without risks posed by Cooks' IVC Filters.

53.     As a direct and proximate result of the Cook IVC Filters' defects, as described herein, Plaintiff suffered permanent and continuous injuries, pain and suffering, disability and impairment. Plaintiff has suffered emotional trauma, harm and injuries that will continue into the future. Plaintiff has lost her ability to live a normal life, and will continue to be so diminished into the future. Furthermore, Plaintiff has lost earnings and will continue to lose earnings into the future and has medical bills, both past and future, related to care because of the Cook IVC Filters' defects.

54.     Defendants have a duty to provide adequate warnings and instructions for their products including their IVC Filters, to use reasonable care to design a product that is not unreasonably dangerous to users.

55.     At all times relevant to this action, Defendants designed, tested, manufactured, packaged, labeled, marketed, distributed, promoted and sold their IVC Filters, placing the devices into the stream of commerce.

56.     At all times relevant to this action, Cook's IVC Filters were designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a condition that was defective and unreasonably dangerous to consumers, including Plaintiff.

57.     Cook IVC Filters are defective in their design and/or formulation in that they are not reasonably fit, suitable, or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with their design and formulation.

58.     Cook IVC Filters were expected to reach, and did reach, users and/or consumers including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which they were manufactured and sold.

59.     Physicians implanted as instructed via the Instructions for Use and in a foreseeable manner as normally intended, recommended, promoted, and marketed by the Defendants. Plaintiff received and utilized Cook IVC Filters in a foreseeable manner as normally intended recommend, promoted, and marketed by the Defendants.

60.     Cook IVC Filters were and are unreasonably dangerous in that, as designed, failed to perform safely when used by ordinary consumers, including Plaintiff, including when the filters were used as intended and in a reasonably foreseeable manner.

61.     Cook IVC Filters were and are unreasonably dangerous and defective in design or formulation for their intended use in that, when they left the hands of the manufacturers and/or supplier, they posed a risk of serious vascular and other serious injury which could have been reduced or avoided, inter alia, by the adoption of a feasible reasonable alternative design. There were safer alternative designs for the like products.

62.     Cook IVC Filters were insufficiently tested and caused harmful adverse events that outweighed any potential utility.

63.     Cook IVC Filters, as manufactured and supplied, were defective due to inadequate warnings, and/or inadequate clinical trials, testing, and study, and inadequate reporting regarding the results of the clinical trials, testing and study.

64.     Cook IVC Filters, as manufactured and supplied, were defective due to its no longer being substantially equivalent to its predicate device with regard to safety and effectiveness.

65.     Cook IVC Filters as manufactured and supplied by the Defendants are and were defective due to inadequate post-marketing warnings or instructions because, after Defendants knew or should have known of the risk of injuries from use and acquired additional knowledge

and information confirming the defective and dangerous nature of its IVC Filters, Defendants failed to provide adequate warnings to the medical community and the consumers, to whom Defendants were directly marketing and advertising; and further, Defendants continued to affirmatively promote their IVC Filters as safe and effective and as safe and effective as their predicate device.

66.     As a direct and proximate result of the Cook IVC Filters' defects, as described herein, Plaintiff has suffered permanent and continuous injuries, pain and suffering, disability and impairment. Plaintiff has suffered emotional trauma, harm and injuries that will continue into the future. Plaintiff has lost her ability to live a normal life, and will continue to be so diminished into the future. Furthermore, Plaintiff has medical bills both past and future related to care because of the IVC filter's defect.

67.     By reason of the foregoing, Defendants are liable to the Plaintiff for damages as a result of their failure to warn and/or adequately warn the Plaintiff and healthcare professionals about the increased risk of serious injury and death caused by their defective IVC filters.

68.     **WHEREFORE,** Plaintiffs demand judgment against the Cook Defendants and seeks damages as detailed in the Global Prayer of Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other an further relief as this Court deems just and proper.

## COUNT II: STRICT PRODUCTS LIABILITY – MISREPRESENTATION LOUISIANA PRODUCTS LIABILITY ACT (LPLA)

69.     Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

70.     Defendants sold the IVC Filters that Plaintiff's healthcare provider implanted

and that Plaintiffs used.

71.     Defendants were engaged in the business of selling the IVC Filters for use and implantation.

72.     Defendants misrepresented facts as set forth herein concerning the character or quality of the IVC Filters that would be material to potential medical treaters and patients considering undergoing surgery to implant the product.

73.     Defendants' misrepresentations were made to potential Plaintiff's treaters and/or purchasers or users as members of the public at large.

74.     As purchasers or users, Plaintiffs and/or their healthcare providers reasonably relied on the misrepresentations.

75.     Plaintiffs were persons who would reasonably be expected to undergo surgery to implant the IVC Filters.

76.     As a direct and proximate result of Defendants' misrepresentations, as described herein, Plaintiff suffered permanent and continuous injuries, pain and suffering, disability and impairment. Plaintiff has suffered emotional trauma, harm and injuries that will continue into the future. Plaintiff has lost her ability to live a normal life, and will continue to be so diminished into the future. Furthermore, Plaintiff has lost earnings and will continue to lose earnings into the future and has medical bills, both past and future, related to care because of the misrepresentations.

77.     By reason of the foregoing, Defendants are liable to the Plaintiff for damages as a result of Defendants' misrepresentations to Plaintiff and healthcare professionals about the increased risk of serious injury and death caused by their defective IVC filters.

78.     **WHEREFORE,** Plaintiffs demand judgment against the Cook Defendants and

seeks damages as detailed in the Global Prayer of Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other an further relief as this Court deems just and proper.

## COUNT III: NEGLIGENCE

79.    Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

80.    At all times relevant to this cause of action, the Cook Defendants were in the business of designing, developing, manufacturing, marketing and selling sophisticated medical devices, including its Cook IVC Filters.

81.    At all times relevant hereto, the Cook Defendants were under a duty to act reasonably to design, develop, manufacture, market and sell a product that did not present a risk of harm or injury to the Plaintiff and to those people receiving their IVC Filters.

82.    At the time of manufacture and sale of the Cook IVC Filters, the Cook Defendants knew or reasonably should have known the Cook IVC Filters:

      a.  were designed and manufactured in such a manner so as to present an unreasonable risk of fracture of portions of the device, as aforesaid;

      b.  were designed and manufactured so as to present an unreasonable risk of migration of the device and/or portions of the device, as aforesaid;

      c.  were designed and manufactured to have unreasonable and insufficient strength or structural integrity to withstand normal placement within the human body; and/or

      d.  were designed and manufactured so as to present an unreasonable risk of perforation and damage to the vena caval wall.

83.     Despite the aforementioned duty on the part of the Cook Defendants, they committed one or more breaches of their duty of reasonable care and were negligent in:

      e.   unreasonably and carelessly failing to properly warn of the dangers and risks of harm associated with the Cook IVC Filters, specifically its incidents fracture, migration, perforation and other failure;

      f.   unreasonably and carelessly manufacturing a product that was insufficient in strength or structural integrity to withstand the foreseeable use of normal placement within the human body;

      g.   unreasonably and carelessly designed a product that was insufficient in strength or structural integrity to withstand the foreseeable use of normal placement within the human body; and

      h.   unreasonably and carelessly designed a product that presented a risk of harm to the Plaintiff and others similarly situated in that it was prone to fail.

84.     As a direct and proximate result of the Cook IVC Filters' defects, as described herein, Plaintiff suffered permanent and continuous injuries, pain and suffering, disability and impairment. Plaintiff has suffered emotional trauma, harm and injuries that will continue into the future. Plaintiff has lost her ability to live a normal life, and will continue to be so diminished into the future. Furthermore, Plaintiff has medical bills both past and future related to care because of the Cook IVC Filters' defects.

85.     By reason of the foregoing, Defendants are liable to the Plaintiffs for damages as a result of their failure to warn and/or adequately warn the Plaintiffs and healthcare professionals about the increased risk of serious injury and death caused by their defective IVC filters.

86.    **WHEREFORE,** Plaintiffs, demand judgment against the Cook Defendants and seeks damages as detailed in the Global Prayer of Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other an further relief as this Court deems just and proper; further,

## COUNT IV: NEGLIGENCE PER SE
(Violation of 21 U.S.C. §§321, 331, 352 and 21 C.F.R. §§1.21, 801, 803, 807, 820)

87.    Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

88.    At all times herein mentioned, Defendants had an obligation not to violate the law, including the Federal Food, Drug and Cosmetic Act and the applicable regulations, in the manufacture, design, testing, production, processing, assembling, inspection, research, promotion, advertising, distribution, marketing, promotion, labeling, packaging, preparation for use, consulting, sale, warning and post-sale warning and other communications of the risks and dangers of Cook IVC Filters.

89.    By reason of its conduct as alleged herein, Cook violated provisions of statutes and regulations, including but not limited to, the following:

a.    Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§331 and 352, by misbranding its Cook IVC Filters;

b.    Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 321 in making statements and/or representations via word, design, device or any combination thereof failing to reveal material facts with respect to the consequences that may result from the use of Cook IVC Filters to which the labeling and advertising relates;

c.   Defendants violated the 21 C.F.R. §1.21 in misleading the consumers and patients by concealing material facts in light of representations made regarding safety and efficacy of its Cook IVC Filters;

d.   Defendants violated the 21 C.F.R. §801 in mislabeling its Cook IVF Filters as to safety and effectiveness of its products and by failing to update its label to reflect post-marketing evidence that Cook IVC Filters were associated with an increased risk of injuries due to tilting, fracture, migration and perforation;

e.   Defendants violated the 21 C.F.R. §803 by not maintaining accurate medical device reports regarding adverse events of tilting, fracture, migration and perforation and/or misreporting these adverse events maintained via the medical device reporting system;

f.   Defendants violated the 21 C.F.R. §807 by failing to notify the FDA and/or the consuming public when its Cook IVC Filters were no longer substantially equivalent with regard to safety and efficacy with regard to post-marketing adverse events and safety signals; and

g.   Defendants violated the 21 C.F.R. §820 by failing to maintain adequate quality systems regulation including, but not limited to, instituting effective corrective and preventative actions,

90.   **WHEREFORE**, Plaintiffs demands judgment against the Cook Defendants and seek damages as detailed in the Global Prayer of Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other an further relief as this Court deems just and proper; further,

## COUNT V: BREACH OF EXPRESS WARRANTY

91.     Plaintiffs repeats and re-alleges each and every allegation of this Master Complaint as if set forth in full in this cause of action. Plaintiffs, though her medical providers, purchased Cook IVC Filters from the Cook Defendants.

92.     At all times to this cause of action, the Cook Defendants were merchants of goods of the kind including medical devices and vena cava filters (i.e., Cook IVC Filters).

93.     At the time and place of sale, distribution and supply of the Cook IVC Filters to Plaintiffs (and to other consumer and the medical community), the Defendants expressly represented and warranted in their marketing materials, both written and orally, and in the IFUs, that the Cook IVC Filters were safe, well-tolerated, efficacious, and fit for their intended purpose and were of marketable quality, that they did not produce any unwarned-of dangerous side effects, and that they were adequately tested.

94.     At the time of Plaintiff's purchase from Defendants, the Cook IVC Filters were not in a merchantable condition and Defendants breached their expressed warranties, in that the filters:

    a.     were designed in such a manner so as to be prone to a unreasonably high incident of fracture, perforation of vessels and organs, and/or migration;

    b.     were designed in such a manner so as to result in a unreasonably high incident of injury to the organs of its purchaser; and

    c.     were manufactured in such a manner so that the exterior surface of the Cook Filters were inadequately, improperly and inappropriately designed causing the device to weaken and fail.

95.     As a direct and proximate result of the Cook IVC Filters' defects, as described

herein, Plaintiff has suffered permanent and continuous injuries, pain and suffering, disability, and impairment. Plaintiff has suffered emotional trauma, harm, and injuries that will continue into the future. Plaintiff has lost her ability to live a normal life and will continue to be so diminished into the future. Furthermore, Plaintiff has medical bills both past and future related to care because of the IVC filters' defect.

96.    By reason of the foregoing, Defendants are liable to the Plaintiffs for damages as a result of their breach express warranty.

97.    **WHEREFORE,** Plaintiffs demands judgment against the Cook Defendants and seeks damages as detailed in the Global Prayer of Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other an further relief as this Court deems just and proper; further,

<u>**COUNT VI: BREACH OF IMPLIED WARRANTY**</u>

98.    Plaintiffs repeat and re-allege each and every allegation of this Master Complaint as if set forth in full in this cause of action.

99.    At all relevant and material times, Defendants manufactured, distributed, advertised, promoted, and sold its IVC Filters.

100.    At all relevant times, the Defendants intended its IVC Filters be used in the manner that Plaintiff in fact used them.

101.    Defendants impliedly warranted their IVC Filters to be of merchantable quality, safe and fit for the use for which the Defendants intended them and for which Plaintiff in fact used them.

102.    Defendants breached their implied warranties as follows:

a.    Defendants failed to provide the warning or instruction and/or an

21

adequate warning or instruction which a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that its Cook IVC Filters would cause harm;

b.    Defendants manufactured and/or sold their Cook IVC Filters and said filters did not conform to representations made by the Defendants when they left the Defendants' control;

c.    Defendants manufactured and/or sold their Cook IVC Filters which were more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and the foreseeable risks associated with the Cook Filters' design or formulation exceeded the benefits associated with that design. These defects existed at the time the products left the Defendants' control; and

d.    Defendants manufactured and/or sold their Cook IVC Filters when they deviated in a material way from the design specifications, formulas or performance standards or from otherwise identical units manufactured to the same design specifications, formulas, or performance standards, and these defects existed at the time the products left the Defendants' control.

103.    Further, Defendants' marketing of their Cook IVC Filters was false and/or misleading.

104.    Plaintiff, through her attending physicians, relied on these representations in determining which IVC filter to use for implantation in the Plaintiff.

105.    Defendants' filters were unfit and unsafe for use by users as they posed an unreasonable and extreme risk of injury to persons using said products, and accordingly

Defendants breached their expressed warranties and the implied warranties associated with the product.

106.    The foregoing warranty breaches were a substantial factor in causing Plaintiff's injuries and damages as alleged.

107.    As a direct and proximate result of the Cook IVC Filters' defects, as described herein, Plaintiff has suffered permanent and continuous injuries, pain and suffering, disability and impairment. Plaintiff has suffered emotional trauma, harm and injuries that will continue into the future.  Plaintiff has lost her ability to live a normal life and will continue to be so diminished into the future. Furthermore, Plaintiff has medical bills both past and future related to care because of the IVC filters' defects.

108.    By reason of the foregoing, Defendants are liable to the Plaintiffs for damages as a result of its breaches of implied warranty.

109.    **WHEREFORE,** Plaintiffs demand judgment against the Cook Defendants and seeks damages as detailed in the Global Prayer of Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other an further relief as this Court deems just and proper; further,

## COUNT VII: LOSS OF CONSORTIUM

110.    Plaintiffs repeats and re-alleges each and every allegation of this Master Complaint as if set forth in full in this cause of action.

111.    At all times relevant hereto the Plaintiff's spouse, Mr. Miller ("Spouse Plaintiff") suffered injuries and losses as a result of the Plaintiff's injuries.

112.    For the reasons set forth herein, Spouse Plaintiff has necessarily paid and have become liable to pay for medical aid, treatment, and  medications, and  will necessarily incur

further expenses of a similar nature in the future as a proximate result of the Defendants' misconduct.

113.    For the reasons set forth herein, Spouse Plaintiff has suffered and will continue to suffer the loss of their loved ones' support, companionship, services, society, love, and affection.

114.    For Spouse Plaintiff, Plaintiff allege their marital relationship has been impaired and depreciated, and the marital association between husband and wife has been altered.

115.    Spouse Plaintiff has suffered great emotional pain and mental anguish.

116.    As a direct and proximate result of the Defendants' misconduct, Spouse Plaintiff has sustained injuries and damages alleged herein and other damages to be proved at trial.

117.    By reason of the foregoing, Defendants are liable to Spouse Plaintiff for damages as a result of Defendants' misconduct.

118.    **WHEREFORE,** Plaintiffs demands judgment against the Cook Defendants and seeks damages as detailed in the Global Prayer of Relief including: compensatory damages,

exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other an further relief as this Court deems just and proper.

## <u>COUNT VIII: NEGLIGENT MISREPRESENTATION</u>

119.    Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

120.    Defendants had a duty to represent to Plaintiffs, Plaintiffs' healthcare providers, the medical and healthcare community, and the public in general that the IVC Filters had been tested and found to be safe and effective for their intended use.

121.    When warning of safety and risks of the IVC Filters, Defendants negligently represented to Plaintiffs, Plaintiffs' healthcare providers, the medical and healthcare community, and the public in general that they had been tested and was found to be safe and/or effective for its indicated use.

122.    Defendants concealed their knowledge of IVC Filter defects from Plaintiffs, Plaintiffs' healthcare providers, and the public in general and/or the medical community specifically.

123.    Defendants concealed their knowledge of the defects in their products from Plaintiffs, Plaintiffs' healthcare providers, and the public in general.

124.    Defendants misrepresented the nature of their product in order to gain a market advantage resulting in increased revenues at the expense of vulnerable patients such as Plaintiffs.

125.    Defendants made these misrepresentations with the intent of defrauding and deceiving Plaintiffs, Plaintiffs' healthcare providers, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing Plaintiffs, Plaintiffs' healthcare providers, the public in general, and the medical community in particular, to recommend and surgically implant the IVC Filters.

126.    Defendants failed to exercise ordinary and reasonable care in their representations of IVC Filters while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution into interstate commerce, and Defendants negligently misrepresented the IVC Filters' high risks of unreasonable, dangerous side effects.

127.    Defendants breached their duty in misrepresenting the IVC Filters' serious side effects to Plaintiffs, Plaintiffs' healthcare providers, the medical and healthcare community, the

FDA, and the public in general.

128.    Plaintiffs and Plaintiffs' healthcare providers reasonably relied on Defendants to fulfil their obligations to disclose all facts within their knowledge regarding the serious side effects the IVC Filters.

129.    As a direct and proximate result of Defendants' negligent misrepresentations regarding the IVC Filters, as described herein, Plaintiff has suffered permanent and continuous injuries, pain and suffering, disability and impairment. Plaintiff has suffered emotional trauma, harm and injuries that will continue into the future.  Plaintiff has lost her ability to live a normal life and will continue to be so diminished into the future. Furthermore, Plaintiff has medical bills both past and future related to care because of the IVC filters' defects.

130.    By reason of the foregoing, Defendants are liable to the Plaintiffs for damages as a result of their negligent misrepresentations.

131.    **WHEREFORE,** Plaintiffs demands judgment against the Cook Defendants and seeks damages as detailed in the Global Prayer of Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other an further relief as this Court deems just and proper; further,

## COUNT IX: FRAUDULENT MISREPRESENTATION

132.    Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

133.    Defendants represented to Plaintiffs, Plaintiffs' healthcare providers, the medical and healthcare community, and the public in general that the IVC Filters had been tested and were found to be safe and effective for their intended use and were free of defects that could and would cause serious side effects, as discussed herein

134.    Defendants fraudulently omitted from these representations information that the IVC Filters could and did cause serious side effects, as discussed herein.

135.    These representations were material and false.

136.    Defendants made these representations and omissions:

(a) with knowledge or belief of their falsity, and/or in the case of omissions, with knowledge or belief of falsity of the resulting statements;

(b) positively and recklessly without knowledge of their truth or falsity;

(c) with knowledge that they were made without any basis; and/or

(d) without confidence in the accuracy of the representations or statements resulting from the omissions.

137.    Defendants made these false representations with the intention or expectation that

Plaintiffs, Plaintiffs' healthcare providers, the public in general, and the medical community in particular, would recommend and implant the IVC Filters, all of which evidenced a callous, reckless, willful, wanton, and depraved indifference to the health, safety, and welfare of Plaintiffs.

138.    At the time Defendants made the aforesaid representations, and, at the time Plaintiffs underwent surgery to implant the IVC Filters, Plaintiffs and Plaintiffs' healthcare providers were unaware of the falsity of Defendants' representations, statements and/or implications and justifiably and reasonably relied upon Defendants' representations, statements, and implications, believing them to be true.

139.    As a direct and proximate result of Defendants' fraudulent misrepresentations regarding the IVC Filters, as described herein, Plaintiff has suffered permanent and continuous

injuries, pain and suffering, disability and impairment. Plaintiff has suffered emotional trauma, harm and injuries that will continue into the future.  Plaintiff has lost her ability to live a normal life and will continue to be so diminished into the future. Furthermore, Plaintiff has medical bills both past and future related to care because of the IVC filters' defects.

140.    By reason of the foregoing, Defendants are liable to the Plaintiffs for damages as a result of their fraudulent misrepresentations.

141.    **WHEREFORE,** Plaintiffs demands judgment against the Cook Defendants and seeks damages as detailed in the Global Prayer of Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other an further relief as this Court deems just and proper; further,

## COUNT X: FRAUDULENT CONCEALMENT

142.    Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

143.    At all times during the course of dealing between Defendants and Plaintiffs and Plaintiffs' healthcare providers, Defendants misrepresented the design characteristics and safety of the IVC Filters for their intended use.

144.    Defendants knew or were reckless in not knowing that its representations were false.

145.    In representations made to Plaintiffs and Plaintiffs' healthcare providers, Defendants fraudulently concealed and intentionally omitted the material information as discussed herein.

146.    Defendants had a duty to disclose to Plaintiffs and Plaintiffs' healthcare providers the defective nature of the IVC Filters as discussed herein.

147.    Defendants had sole access to material facts concerning the defective nature of the IVC Filters and their propensity to cause serious and dangerous side effects, and therefore cause damage to persons who underwent surgery to implant the IVC Filters at issue, drugs at issue, including Plaintiff, in particular.

148.    Defendants' concealment and omissions of material facts concerning the safety of the IVC Filters were made purposefully, wilfully, wantonly, and/or recklessly to mislead Plaintiffs and Plaintiffs' healthcare providers to cause them to surgically implant the IVC Filters.

149.    Defendants knew that Plaintiffs and Plaintiffs' healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, including the material omissions of facts surrounding the IVC Filters set forth herein.

150.    Plaintiffs and Plaintiffs' healthcare providers reasonably relied on information revealed by Defendants that negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

151.    As a direct and proximate result of Defendants' fraudulent concealment regarding the IVC Filters, as described herein, Plaintiff has suffered permanent and continuous injuries, pain and suffering, disability and impairment. Plaintiff has suffered emotional trauma, harm and injuries that will continue into the future.  Plaintiff has lost her ability to live a normal life and will continue to be so diminished into the future. Furthermore, Plaintiff has medical bills both past and future related to care because of the IVC filters' defects.

152.    By reason of the foregoing, Defendants are liable to the Plaintiffs for damages as a result of their fraudulent concealment.

153.    **WHEREFORE,** Plaintiffs demands judgment against the Cook Defendants and

seeks damages as detailed in the Global Prayer of Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other an further relief as this Court deems just and proper; further,

## TOLLING OF THE LIMITATIONS PERIOD

154.    Defendants, through its affirmative misrepresentations and omissions, actively concealed from Plaintiffs and Plaintiff's healthcare providers the true and significant risks associated with Cook's IVC Filters.

155.    As a result of Defendants' actions, Plaintiff and her prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this Complaint, and that those risks were the result of Defendants' acts, omissions, and misrepresentations.

156.    Accordingly, no limitations period ought to accrue until such time as Plaintiff knew or reasonably should have known of some causal connection between Plaintiff being implanted with a Cook IVC Filter and the harm Plaintiff suffered as a result.

157.    Additionally, the accrual and running of any applicable statute of limitations have been tolled by reason of Defendants' fraudulent concealment.

158.    Additionally, Defendants are equitably estopped from asserting any limitations defense by virtue of their fraudulent concealment and other misconduct as described.

159.    Additionally, the limitations period ought to be tolled under principles of equitable tolling.

## GLOBAL PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiffs demand judgment against the Cook Defendants as follows:

A.      Compensatory damages, including without limitation past and future medical expenses; past and future pain and suffering; past and future emotional distress; past and future loss of enjoyment of life; past and future lost wages and loss of earning capacity; funeral and burial expenses; and consequential damages;

B.      Punitive damages in an amount sufficient to punish Defendants and set an example;

C.      Disgorgement of profits;

D.      Restitution;

E.      Costs and fees of this action, including reasonable attorney's fees;

F.      Prejudgment interest and all other interest recoverable; and

G.      Such other additional and further relief as Plaintiffs may be entitled to in law or in equity according to the claims pled herein.

## DEMAND FOR JURY TRIAL

The Plaintiffs respectfully request trial by jury in the above case as to all issues.

Respectfully submitted,

*/s/ Dawn M. Barrios*
DAWN M. BARRIOS (La. Bar No. 2821)
JOSEPH I. GIARRUSSO III (La. Bar No. 27476)
BARRIOS KINGSDORF & CASTEIX, L.L.P.
701 Poydras Street, Suite 3650
New Orleans, Louisiana 70139
Tel: (504) 524-3300
Fax: (504) 524-3313
barrios@bkc-law.com
jgiarrusso@bkc-law.com

**Attorneys for Plaintiffs**